IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK ANTHONY MORENO,

    Plaintiff,                    No. CIV S-08-1344 JAM EFB P

    vs.

DAVID MEDINA, et al.,

    Defendants.                ORDER AND
                                        FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  He has filed a motion for preliminary injunctive relief, which, after the court ordered them to respond, defendants have opposed.  *See* Dckt Nos. 82, 86.  Plaintiff then filed another motion for injunctive relief, which the court construes as a reply brief to his original motion, as it requests virtually the same relief.  *See* Dckt. No. 88.

        Plaintiff argues that CDCR is impeding his ability to respond to the defendants' filings and discovery requests by removing documents from his file and not allowing him to go to the law library.  *Id.* at 2-3.  The court's previous August 30, 2010 order stated, "Plaintiff shall present this court order to any prison official preventing him from accessing the prison law library.  Should plaintiff be denied access to the law library, he shall inform the court of the name of the prison official preventing access and the attendant circumstances."  Dckt. No. 74 at

1

3.

Plaintiff states that even after showing his court order he was still denied access to the prison law library. *Id.* at 2.  He states that he went to the law library on September 27, 2010, but since then he has been turned away.  Plaintiff has attached a copy of an internal appeal stating that when he went to the law library on September 27 and asked to make copies, he showed his court order to Dikins, who stated, "I'm not letting you in my law library doors I don't care if you- got a court order" and "if you don't like how I run my library then you don't have to come in." Dckt. No. 82, Ex. B.  Plaintiff states that he "showed Dikins the court order for PLU status . . . he snatched the papers that I just filled out for PLU and . . . said I don't care about no court order it's D.E.N.I.E.D.  Then Dikins took my court order papers and began to copy them . . . he said if it's in my library then I have the right I got to see if my name is in it, when appellant said to give back his legal papers from the courts Dikins [threw] appellant's legal court order papers at him hitting him with the papers in the chest . . . then told him to get the fuck out of my library." *Id.*

Plaintiff also states that after he asked the mental health EOP CCI, Sherrell, to sign an affidavit regarding important documents that were coming up missing in his file, Sherrell threatened him, stating "so that's the way you want to play this.  I can play fuckin[g] hard ball to[o] you know your hardship to stay in this prison!  Kern Valley State Prison!  Well, let's see if I don't have your ass put up for transfer." *Id.* at 3.  Plaintiff asks that the court order that he be placed on PLU status, and order CDCR to stop retaliating against him, and that he not be transferred out of Kern Valley State Prison. *Id.* at 4.

Defendants' opposition is supported by declarations from various CDCR employees.  E. Rodriguez, a Correctional Case Records Manager, declares that CDCR follows a policy of "flagging" an inmate's file to ensure that no documents are removed from the file. Dckt. No. 86-1.  Rodriguez attests that there is a letter in plaintiff's file from the Deputy Attorney General stating that no documents were to be removed from the file.  On this basis, Rodriguez attests that

no documents have been removed from the file.

Norm Olsen, the custodian of records at Kern Valley State Prison, has submitted a declaration authenticating a document entitled "General Ducat Request" for the law library on September 27, 2010, submitted by L. Dikin, LTA. Dckt. No. 86-2. This document shows inmates' names and whether they were ducated as PLU or GLU. Plaintiff's name is written at the bottom of the list with an explanatory note that continues to the next page, apparently written by Dikin. The note states that Dikins told plaintiff that he was supposed to submit a request to come to the library. Plaintiff said that he had a court order and a deadline. The note states, "He played it all off like he wasn't interested in the rules. He has showed up here with officers, lieutenants, and sergeants to demand entrance, but never requests through proper channels." Dikin writes that plaintiff's court order showed that he had a deadline that had already passed, and "when I attempted to copy the court order with the date he started shouting at me that I couldn't have it if I was denying PLU status." Attached is a typed document dated February 14, 2011, apparently written by Olsen, although there is only a typed name instead of a signature, stating that plaintiff has not submitted any written requests to come to the law library since July.

W. Adams, the litigation coordinator at Kern Valley State Prison, declares that Dikins used to work as a Library Technical Assistant, but since voluntarily resigned from the position. Dckt. No. 86-3. He states that he requested Dikins' contact information, but it was not available at the time that the motion was filed.

Defendants D. Hitchcock, G. James and D. Medina all attest that they have not communicated with anyone at the Kern Valley State Prison law library, have not asked anyone to deny plaintiff law library access, and have not communicated with anyone at KVSP regarding plaintiff or this case. Dckt. Nos. 86-4-6.

R. Sherrill, the EOP counselor, attests that he remembers that plaintiff asked him to sign an affidavit. Dckt. No. 86-7. He told plaintiff that he would not sign it because the litigation department prohibits him from signing inmate affidavits. He states that he did not threaten

plaintiff and did not say the words plaintiff recites in the instant motion. He further declares that he does not know and has never spoken to defendants.

Plaintiff's reply brief states that he is still being turned away from the law library "even after showing proof from court's documents." Plaintiff does not state that he has submitted a request to use the library or has attempted to use the appropriate procedures. He states again that important documents are missing from his central and medical files. He requests that the court order the Attorney General and CDCR to provide him a full copy of his central file without charge. However, plaintiff does not explain why he could not review his central file during the discovery process. He also asks that he not be retaliated against by CDCR staff.

Plaintiff also states that he has sent in hundreds of 602 grievances regarding his testosterone, but has received no answer. He claims that defendants are refusing to answer his grievances on purpose so that plaintiff cannot file any new lawsuits.[1]

As noted, plaintiff seeks preliminary injunctive relief. A preliminary injunction will not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989). A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). The moving party must prove that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The

---

[1] Plaintiff seems to allege that defendants have prevented him from further pursuing what would other wise be available administrative remedies. He chose to withdraw this claim from the instant lawsuit and it therefore cannot form the basis for a preliminary injunction. *See* Dckt. No. 77. However, if prison officials are making it impossible for plaintiff to exhaust his complaint, it may well be that plaintiff has already completed all that is required of him under the exhaustion requirement as it applies to a new federal lawsuit bases on this claim.

4

Ninth Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions-that is, balancing the elements of the preliminary injunction test, so that a stronger showing of one element may offset a weaker showing of another-survives *Winter* and continues to be valid. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010). In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Here, plaintiff has not met his burden of proving that he is likely to succeed on the merits. Indeed, the subject of plaintiff's motion for preliminary injunction is only tangentially related to the allegations in his complaint. Neither has he shown that he will suffer irreparable harm in the absence of injunctive relief. He states that he wished to access the law library in order to respond to defendants' document production requests, but there is no irreparable injury to him if he is unable to respond to those requests. He also asks that he not be transferred from KVSP, but as Sherrell attests that he did not threaten plaintiff with a transfer, plaintiff has not demonstrated that it is likely that he will be transferred in retaliation for filing this lawsuit. Similarly, plaintiff has not demonstrated that the balance of the equities tips in his favor, or that an injunction is in the public interest. As plaintiff has not met his burden of proving that he is entitled to a preliminary injunction, his motion must be denied.

Defendants renewed their motion for summary judgment on March 28, 2011. As this motion was pending, plaintiff may have mistakenly thought that he was relieved of his obligation to file an opposition to the motion. In an abundance of caution, the court grants plaintiff twenty-one days to respond to the summary judgment motion. Failure to file an opposition will be deemed a waiver of any opposition to the motion. Plaintiff will need to use the law library to prepare his response. If he is prevented from using the law library after attempting to follow prison procedures to access it, he may inform the court of the attendant circumstances and the

1  names of the persons preventing him from using the library.

2  Accordingly, it is hereby ORDERED that, within twenty-one days of the date of this
3  order, plaintiff shall respond to defendants' motion for summary judgment.

4  Further, it is hereby RECOMMENDED that plaintiff's motion for injunctive relief be
5  denied.

6  These findings and recommendations are submitted to the United States District Judge
7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
8  after being served with these findings and recommendations, any party may file written
9  objections with the court and serve a copy on all parties.  Such a document should be captioned
10 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
11 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
12 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
13 DATED: June 3, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE