1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARK ANTHONY MORENO,

11              Plaintiff,                    No. 2:08-cv-1344 JAM EFB P

12        vs.

13   D. MEDINA, et al.,

14              Defendants.                    FINDINGS AND RECOMMENDATIONS
                                   /

15

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  The remaining defendants in this action, Medina, James, and Hitchcock, move

18   for summary judgment .  Dckt. No. 49.  For the reasons that follow, the undersigned

19   recommends that the motion be granted in part and denied in part.

20   **I.      Background**

21        This action proceeds on the verified complaint filed June 13, 2008.  Dckt. No. 1.  Plaintiff

22   alleges that defendant Medina deprived him of necessary testosterone injections between

23   December 4, 2007 and June 5, 2008, retaliated against plaintiff for filing a staff complaint

24   against him by canceling plaintiff's hydrocodone prescription and confiscating medical

25   appliances and chronos, deprived him of necessary testosterone gel between May 24, 2008 and

26   ////

1   June 5, 2008.  Dckt. No. 1 at 4.[1]  Plaintiff alleges, "I told Dr. James and . . . [he] did nothing."

2   *Id.*  Plaintiff further alleges that, beginning on June 5, 2008, defendant Medina ordered that

3   plaintiff be given testosterone injections on such a frequent basis as to cause plaintiff to suffer

4   adverse side effects.  *Id.*  Lastly, plaintiff alleges that defendant Hitchcock seized his medical

5   appliances (including a cane, a knee brace, a double mattress, and a "waistchain chrono"), telling

6   him the seizure was "because of stupid paper work you file on the Dr. Medina."  *Id.* at 5.

7        In its screening order of November 12, 2008, the court concluded that plaintiff had stated

8   cognizable claims for purposes of 28 U.S.C. § 1915A that defendants Medina, James and

9   Hitchcock were deliberately indifferent to plaintiff's serious medical needs and that defendant

10  Medina retaliated against plaintiff.  Dckt. No. 12 at 1-2.

11       Briefing on the current motion demonstrates that the following facts are undisputed

12  unless otherwise indicated[2]: At all relevant times, plaintiff was an inmate at High Desert State

13  Prison ("HDSP").  Dckt. No. 49-2, Defs.' Stmt. of Undisp. Facts in Supp. of Defs.' Mot. for

14  Summ. J. (hereinafter "DUF") 1.  Defendant James was a physician at HDSP, defendant Medina

15  was a physician assistant, and defendant Hitchcock was a correctional officer.  DUF 2-4.

16  Defendant Medina was plaintiff's primary medical care provider.  DUF 5.

17       Defendants contend that plaintiff had a prescription for hydrocodone when he arrived at

18  HDSP.  DUF 7.  Plaintiff disputes this, declaring that he had had a prescription for oxycodone at

19  his previous institution (R.J. Donovan), but that it was cancelled the day before he transferred to

20

21        [1] Page numbers cited herein are those assigned by the court's electronic docketing system
     and not necessarily those assigned by the parties.

22        [2] Plaintiff has not reproduced the itemized facts in defendants' Statement of Undisputed
     Facts, admitting those facts that are undisputed and denying those that are disputed, including
23   with each denial a citation to the item(s) of evidence relied on, as Local Rule 260(b) requires.
     The court has looked to the declaration plaintiff has filed in opposition to the motion for
24   summary judgment and plaintiff's verified complaint to determine the facts in dispute and
     considers facts proffered by defendants and not disputed by those documents as undisputed.  *See*
25   Fed. R. Civ. P. 56(e) (if a party fails to support an assertion of fact or properly address another
     party's assertion of fact, the court may, among other things, consider the fact undisputed or issue
26   any other appropriate order).

1    HDSP.  Dckt. No. 95, "Pl. Answering Defs.' Mot. for Summ. J." (hereinafter "Pl.'s Decl.") at 1.

2    Defendant relies on the declaration of defendant Medina but provides no substantiating

3    documentation.  Plaintiff cites to his "outpatient medical record," which is not appended to his

4    opposing papers.  However, defendants have previously provided many of plaintiff's medical

5    records appended to defendants' opposition to plaintiff's September 20, 2010 motion to compel.

6    *See* Dckt. No. 81.  Those records show that plaintiff requested oxycodone for pain following his

7    transfer to HDSP.  Dckt. Nos. 81-8 at 9, 14, 81-7 at 49.  The court could not locate in the records

8    any reference to a hydrocodone prescription for plaintiff at the time of his transfer to HDSP.

9        Defendants claim that plaintiff stated he was taking hydrocodone for testicular cancer,

10   but that defendant Medina discovered from plaintiff's medical records that plaintiff did not have

11   cancer and consequently canceled the prescription as not medically necessary.  DUF 8-10.

12   Plaintiff, on the other hand, claims that he never told defendant Medina he had testicular cancer

13   but rather complained of testicular pain.  Pl.'s Decl. at 1.  According to plaintiff, he was given

14   hydrocodone for 30 days from February 19, 2008 by defendant Medina for testicular pain.  Pl.'s

15   Decl. at 2.  He claims that defendant Medina told him he would not continue the prescription

16   unless plaintiff dropped a staff complaint he had filed against defendant Medina, which plaintiff

17   refused to do.  Pl.'s Decl. at 2; Dckt. No. 1, Compl. at 4.

18       Again, both parties simply rely on their declarations to establish their opposing versions

19   of the facts.  The court notes that plaintiff's medical records filed in opposition to the motion to

20   compel show that, consistent with plaintiff's assertions, hydrocodone was ordered for plaintiff on

21   February 19, 2008 for testicular pain and was administered for approximately thirty days.  Dckt.

22   Nos. 81-6 at 30, 81-9 at 15.  Those records also show that, consistent with defendants'

23   assertions, plaintiff periodically indicated to medical staff, including defendant Medina, that he

24   had a history of testicular cancer.  Dckt. Nos. 81-8 at 14, 81-7 at 27, 39, 41, 81-6 at 49.

25       The parties do not dispute that plaintiff had been diagnosed with hypogonadism, a

26   condition requiring treatment with intramuscular testosterone injections.  DUF 16-17.  Defendant

1  Medina declares that he ordered the injections, counseled plaintiff multiple times on their

2  importance, and ensured the medical clinic was offering them, but that plaintiff refused most of

3  them between December 3, 2007 and June 4, 2008.  DUF 19-22.  Plaintiff declares that he was

4  never offered testosterone injections during that period or counseled by defendant Medina as to

5  their importance, and that he had to go on a hunger strike to obtain the testosterone treatment.

6  Pl.'s Decl. at 2-3.  Again the parties rely solely on their declarations to support their factual

7  claims.  The medical records appended to defendants' opposition to plaintiff's motion to compel

8  tend to support plaintiff's version of the facts, however.  A document dated January 17, 2008

9  notes an order for intramuscular testosterone injections, but another document dated two days

10 later discontinued that order, replacing it with one for topical testosterone gel (possibly due to

11 plaintiff's complaint that the injections caused him to develop lumps called lipomas).  Dckt. Nos.

12 81-6 at 34, 36, 81-8 at 14.  Documents from the same month indicate that plaintiff was on a

13 hunger strike until he got testosterone shots and pain medication.  Dckt. Nos. 81-8 at 14, 81-7 at

14 46, 48, 49 (progress note by defendant James stating, "He [plaintiff] indicates that the reason for

15 his hunger strike is that he is not getting shots of testosterone and he is not getting oxycodone.").

16 Defendant James noted on January 22, 2008 that he would try to obtain plaintiff's medical

17 history to "see why a urologist in the past thought that he [plaintiff] was having testicular pain

18 and what the reason for the testicular atrophy may have been and what the particular need for

19 testosterone treatment would be."  Dckt. No. 81-7 at 49.  Thus, it appears that medical staff had

20 not determined that testosterone shots were necessary as of that date and that plaintiff was not

21 receiving them, but he was getting topical testosterone gel.  On March 4, 2008, defendant James

22 again noted the need to determine what treatment plaintiff had received in the past for his

23 testicular problems.  Dckt. No. 39.  It further appears possible that testosterone shots had still not

24 been ordered for plaintiff as of April 22, 2008, when defendant Medina ordered that plaintiff

25 continue the topical gel and that his testosterone level be measured, "as the levels done last

26 month was [sic] subtherapeutic."  Dckt. No. 81-7 at 27.

1      According to defendants, defendant James had no involvement in plaintiff's treatment

2  with testosterone and pain medication.  Dckt. No. 49-1, Defs.' P.'s & A.'s in Supp. of  Mot. for

3  Summ J., at 6.  Plaintiff claims that he informed defendant James of defendant Medina's

4  allegedly unconstitutional care but that defendant James did nothing.  Compl. at 4.  The medical

5  records show that plaintiff did complain of his need for testosterone shots and oxycodone to

6  defendant James, who concluded that further review of plaintiff's medical history was necessary

7  to substantiate plaintiff's claimed need for testosterone and pain medication for testicular pain.

8  Dckt. Nos. 81-7 at 49 (note dated January 22, 2008 stating "He [plaintiff] indicates that the

9  reason for his hunger strike is that he is not getting shots of testosterone and he is not getting

10  oxycodone."), 81-7 at 39 (note dated March 4, 2008 stating "The patient is here requesting a

11  testosterone blood level.  He was getting injections of testosterone IM once a month and then

12  that has been changed to the topical gel.").

13      It is undisputed that, on March 4, 2008, defendant James examined plaintiff, who stated

14  that he was not disabled and performed the necessary exercises to so demonstrate.  DUF 24-25.

15  (It appears from the medical records that plaintiff wished to be transferred back to R.J. Donovan

16  and may have believed that his disabled status would prevent that transfer).  *See* Dckt. No. 81-8

17  at 14 (note by medical staff stating that plaintiff wanted to be off ADA, give up "WC" and his

18  cane and go back to R.J. Donovan).)  Accordingly, defendant James issued an order that plaintiff

19  be removed from the Disability Placement Program ("DPP").  DUF 26.

20      According to defendants, defendant Hitchcock confiscated plaintiff's medical appliances

21  and chronos associated with his participation in the DPP on June 4, 2008 after being ordered to

22  do so by the medical department in accord with defendant James's March 4, 2008 order.  DUF

23  29-30.  Defendant Hitchcock declares that he did not believe he was subjecting plaintiff to any

24  risk of harm but that, on the contrary, plaintiff would not be harmed by the loss of these items

25  because plaintiff's doctor had ordered it.  DUF 33.  Plaintiff, however, declares that defendant

26  Hitchcock knew that the items were ordered seized not because he no longer needed them but in

5

1  retaliation for the staff complaint he had filed against defendant Medina.  Pl.'s Decl. at 2, 3;

2  Compl. at 5.  According to plaintiff, defendant Hitchcock informed him during the seizure that

3  he was taking the items because plaintiff had "602'ed" medical staff.  Pl.'s Decl. at 2; *see also*

4  Compl. at 5.

5  **II.    Summary Judgment Standards**

6       Summary judgment is appropriate when there is "no genuine dispute as to any material

7  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

8  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

9  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

10  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

11  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

12  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

13  motion asks whether the evidence presents a sufficient disagreement to require submission to a

14  jury.

15       The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

16  or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

17  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

18  trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

19  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

20  under summary judgment practice, the moving party bears the initial responsibility of presenting

21  the basis for its motion and identifying those portions of the record, together with affidavits, if

22  any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

23  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

24  party meets its burden with a properly supported motion, the burden then shifts to the opposing

25  party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

26  *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

1       A clear focus on where the burden of proof lies as to the factual issue in question is

2  crucial to summary judgment procedures.  Depending on which party bears that burden, the party

3  seeking summary judgment does not necessarily need to submit any evidence of its own.  When

4  the opposing party would have the burden of proof on a dispositive issue at trial, the moving

5  party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

6  *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

7  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

8  24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

9  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

10 depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

11 should be entered, after adequate time for discovery and upon motion, against a party who fails

12 to make a showing sufficient to establish the existence of an element essential to that party's

13 case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

14 circumstance, summary judgment must be granted, "so long as whatever is before the district

15 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

16 satisfied."  *Id.* at 323.

17      To defeat summary judgment the opposing party must establish a genuine dispute as to a

18 material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

19 that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

20 at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

21 law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

22 material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

23 opposing party is unable to produce evidence sufficient to establish a required element of its

24 claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

25 an essential element of the nonmoving party's case necessarily renders all other facts

26 immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

1   issue. *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

2   dispute over an issue that is determinative of the outcome of the case.

3       On January 28, 2009, the court informed plaintiff of the requirements for opposing a

4   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 21; *see Rand v.*

5   *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and

6   *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

7   **III.    Analysis**

8       As noted in the court's screening order, plaintiff has stated claims against defendants

9   Medina and James for deprivation of necessary testosterone, pain medications, medical

10  appliances and chronos in violation of the Eighth Amendment, against defendant Hitchcock for

11  deprivation of necessary medical appliances and chronos in violation of the Eighth Amendment,

12  and against defendant Medina for retaliating against him by seizing his medical devices and

13  chronos in violation of the First Amendment.

14          A.      Eighth Amendment Claims.

15      The Eighth Amendment protects prisoners from inhumane methods of punishment and

16  from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

17  2006).  Extreme deprivations are required to make out a conditions of confinement claim, and

18  only those deprivations denying the minimal civilized measure of life's necessities are

19  sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

20  503 U.S. 1, 9 (1992).

21      To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

22  plaintiff must establish that he had a serious medical need and that the defendant's response to

23  that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

24  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

25  treat plaintiff's condition could result in further significant injury or the unnecessary and wanton

26  infliction of pain.  *Jett*, 439 F.3d at 1096.  An officer has been deliberately indifferent if he was

1  (a) subjectively aware of the serious medical need and (b) failed to adequately respond.  *Farmer*

2  *v. Brennan*, 511 U.S. 825, 828 (1994).

3      Neither a defendant's negligence nor a plaintiff's general disagreement with the

4  treatment he received suffices to establish deliberate indifference.  *Estelle*, 429 U.S. at 106;

5  *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d

6  390, 394 (9th Cir. 1988).  Evidence that medical caregivers disagreed as to the need to pursue

7  one course of treatment over another is also insufficient, by itself, to establish deliberate

8  indifference.  *Jackson*, 90 F.3d at 332.  When a prisoner alleges a delay in medical treatment, he

9  must show the delay caused an injury.  *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.

10  1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.

11  1997) (en banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several

12  day delay in treatment did not violate Eighth Amendment where there was no emergency and

13  given plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available

14  was painkillers).

15      Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to

16  intervene" to prevent a violation imposed by someone else.  *Robins v. Meecham*, 60 F.3d 1436,

17  1442 (9th Cir. 1995).  A defendant-officer may be held liable for failing to intervene when he

18  had enough time to observe what was happening and to intervene and prevent or curtail the

19  violation, but failed to do so.  *See Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459, 2010

20  WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

21      Plaintiff alleges that defendants Medina and James failed to provide him with necessary

22  testosterone treatments and pain medication and that defendants Medina, James and Hitchcock

23  deprived him of necessary medical appliances and chronos.

24      Defendants argue that the undisputed facts show that defendant James was not involved

25  in plaintiff's care concerning his testosterone injections and pain medication and thus there is no

26  causal connection between defendant James and the alleged denial of that care.  However,

plaintiff's verified complaint alleges that he told Dr. James of his complaints regarding the injections and pain medication and defendant James did nothing.  As discussed in the recital of facts, medical evidence in the court's record shows that plaintiff told defendant James he needed testosterone shots and pain medication.  As defendant James's involvement in plaintiff's alleged need for treatment with testosterone and pain medication is disputed, summary adjudication of this aspect of plaintiff's Eighth Amendment claim against defendant James is not warranted.

Defendants next argue that the undisputed facts show that defendant James canceled plaintiff's disability chrono after plaintiff told him he was not disabled and demonstrated he was not disabled.  Plaintiff does not dispute this fact.  Accordingly, the undisputed facts show that defendant James acted reasonably in response to plaintiff's assertion that he was not disabled and consequent physical demonstration, and summary judgment of this portion of plaintiff's Eighth Amendment claim should be granted in favor of defendant James.

Defendants next argue that there is no causal connection between defendant Medina and the cancellation of plaintiff's medical chronos (other than the order for hydrocodone) because the undisputed facts show that defendant Medina did not cancel plaintiff's chronos.  Plaintiff's declaration and verified complaint aver that defendant Hitchcock confiscated his medical appliances and chronos because plaintiff had filed a staff complaint against defendant Medina, raising the inference that defendant Medina ordered the chronos confiscated.  However, because it is undisputed that plaintiff told defendant James that he was not disabled and physically demonstrated that he was not disabled, and because plaintiff has not proffered any evidence that he suffered adverse medical consequences from the confiscation, he has failed to raise a triable issue of material fact that he had a serious medical need for the chronos.  Accordingly, summary judgment must be granted in favor of defendant Medina on this aspect of plaintiff's Eighth Amendment.

////

////

Defendant Medina next claims that the undisputed facts show that he canceled plaintiff's hydrocodone prescription because there was no medical need for it, as plaintiff did not have testicular cancer.  Plaintiff disputes that the prescription was for cancer, averring instead that it was written to address testicular pain, an assertion that finds support in the medical documents in the court's record.  Plaintiff further avers that defendant Medina cancelled the prescription because plaintiff would not withdraw a staff complaint against him.  Defendant Medina does not address plaintiff's claim that the medication was necessary for testicular pain.  Nor does defendant Medina address plaintiff's claims that he informed defendant Medina of his need for oxycodone to address the pain and was not ever provided any between his transfer to HDSP and June 2008.  Plaintiff has raised a triable issue of material fact as to whether there was a need for medication to address testicular pain and whether defendant Medina was aware of that need did not respond reasonably to it.  Defendant Medina's claim that he is entitled to qualified immunity because plaintiff had no medical need for the hydrocodone relies on resolution of these disputed facts.  Accordingly, summary judgment of this portion of plaintiff's Eighth Amendment claim against defendant Medina must be denied.

Defendant Medina next argues that the undisputed facts show that, despite defendant Medina's orders, best efforts and advice, plaintiff refused his testosterone injections between December 3, 2007 and June 4, 2008.  Plaintiff flatly disputes these facts.  Moreover, the medical evidence in the court's record indicates that plaintiff often did not have a prescription for testosterone shots during this period.  The parties do not dispute that plaintiff needed those shots to treat his hypogonadism.  In addition, defendant Medina does not address plaintiff's allegation that defendant Medina deprived plaintiff of necessary testosterone gel for a period of time in 2008 and required that plaintiff receive more testosterone injections than were necessary.  Accordingly, plaintiff has raised a triable issue of material fact that defendant Medina failed to respond reasonably to plaintiff's need for testosterone treatment.  Defendant Medina's claim that he is entitled to qualified immunity because he did all he could to ensure that plaintiff got

1 testosterone shots fails because it relies on resolution of these disputed facts.  Accordingly,

2 summary judgment of this portion of plaintiff's Eighth Amendment claim against defendant

3 Medina must be denied.

4       Defendant Hitchcock argues that he did not subject plaintiff to any risk of harm by

5 confiscating his medical devices and chronos.  As discussed earlier, plaintiff has failed to raise a

6 triable issue of fact that he faced a risk of harm from this act, as it is undisputed that he had

7 previously stated and physically demonstrated that he was not disabled.  Accordingly, summary

8 judgment on plaintiff's Eighth Amendment claim against defendant Hitchcock should be granted

9 in favor of Hitchcock.

10       B.    First Amendment Claim.

11       To state a viable First Amendment retaliation claim, a prisoner must allege five elements:

12 (1) that a state actor took some adverse action against an inmate (2) because of (3) that inmate's

13 protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

14 rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v.*

15 *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

16       Defendant Medina argues that the undisputed facts show that he canceled plaintiff's

17 hydrocodone prescription because there was no medical need for it, not because plaintiff filed a

18 staff complaint against him.  Defendant Medina declares that he was not aware of the complaint

19 at the time he canceled the prescription.  However, as stated earlier, plaintiff's verified complaint

20 and declaration in opposition to summary judgment state that defendant Medina told plaintiff

21 that he would not continue the prescription unless plaintiff dropped the complaint.  Defendant

22 Medina also argues that canceling the prescription served the legitimate goal of providing

23 appropriate care to plaintiff, because plaintiff did not need the prescription.  Again, plaintiff

24 disputes this fact, averring that he needed the medication for testicular pain.  Defendant

25 Medina's argument that he acted reasonably and is thus entitled to qualified immunity depends

26 on the resolution of these disputed facts.  Because plaintiff has raised a triable issue of fact as to

1  whether defendant Medina canceled the prescription because of the complaint and as to whether

2  plaintiff suffered from testicular pain that required treatment with pain medication, summary

3  judgment as to plaintiff's retaliation claim against defendant Medina is not appropriate.

4  **IV.    Recommendation**

5          Accordingly, it hereby is RECOMMENDED that the January 28, 2010 motion for

6  summary judgment filed by defendants be granted as to plaintiff's claim that defendants James,

7  Medina, and Hitchcock violated the Eighth Amendment by confiscating his medical devices and

8  chronos on June 4, 2008, but denied as to plaintiff's remaining claims against defendants James

9  and Medina.

10         These findings and recommendations are submitted to the United States District Judge

11 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12 after being served with these findings and recommendations, any party may file written

13 objections with the court and serve a copy on all parties.  Such a document should be captioned

14 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

15 within the specified time may waive the right to appeal the District Court's order. *Turner v.*

16 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17 Dated:  June 29, 2012.

18

19                                          EDMUND F. BRENNAN
                                           UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

14