IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK ANTHONY MORENO,

      Plaintiff,                       No. 2:08-cv-1344 JAM EFB P

    vs.

D. MEDINA, et al.,

      Defendants.               FINDINGS AND RECOMMENDATIONS

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The remaining defendants, Medina, James, and Hitchcock, move for summary judgment on plaintiff's Eighth Amendment claim. Dckt. No. 109. For the reasons that follow, the motion should be granted.

**I.     Background**

       This action proceeds on the verified complaint filed June 13, 2008. Dckt. No. 1. Plaintiff alleges that from December 3, 2007 through February 29, 2008, defendants James and Medina deprived him of a prescription for oxycodone, a medication he needed for pain. Dckt. No. 1 at 3.[1] Defendant Medina gave plaintiff a prescription for another pain medication, hydrocodone,

---

[1] Page numbers cited herein are those assigned by the court's electronic docketing system and not necessarily those assigned by the parties.

1

from February 29, 2008 through March 23, 2008, but refused to renew the prescription when plaintiff refused to drop an administrative grievance plaintiff had filed against him. *Id.*

Plaintiff further alleges that defendants James and Medina deprived him of necessary testosterone shots from December 4, 2007 through June 5, 2008 and necessary testosterone gel beginning on March 24, 2008, despite a lab test result in April 2008 revealing that plaintiff's testosterone level was dangerously low. *Id.* at 4. Beginning on June 5, 2008, defendant Medina allegedly ordered that plaintiff be given testosterone injections, but on such a frequent basis as to cause plaintiff to suffer adverse side effects. *Id.*

Defendant Medina also allegedly ordered defendant Hitchcock to seize plaintiff's medical appliances and chronos (including a cane, a knee brace, a double mattress, and a "waistchain chrono") in retaliation against plaintiff for filing the grievance. *Id.* Plaintiff claims that when defendant Hitchcock confiscated those items, he told plaintiff it was "because of stupid paper work you file on the Dr. Medina." *Id.* at 5.

In its screening order of November 12, 2008, the court concluded that plaintiff had stated cognizable claims for purposes of 28 U.S.C. § 1915A that defendants Medina, James and Hitchcock were deliberately indifferent to plaintiff's serious medical needs and defendant Medina retaliated against plaintiff. Dckt. No. 12 at 1-2.

Defendants filed a motion for summary judgment on January 28, 2010. Dckt. No. 49. The undersigned issued findings and recommendations on June 29, 2012, recommending that the motion be granted in part and denied in part. Dckt. No. 99. Defendants sought leave to file a supplemental motion for summary judgment. Dckt. No. 100. Due to the Ninth Circuit's conclusion in *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), that prisoners must be provided with notice of their obligations in responding to a summary judgment motion concurrently with the motion, the undersigned vacated the findings and recommendations on August 9, 2012. Dckt. No. 105. Defendants were ordered to file a new motion with the appropriate notice, containing their supplemental arguments. *Id.* The court informed plaintiff that he could file an

amended or supplemental opposition, but that if he did not, the court would consider his prior opposition in determining the motion. *Id.*

Defendants' filed the new motion for summary judgment[2] on September 10, 2012. Dckt. No. 109. Plaintiff has not filed a new opposition. Accordingly, the court looks to his prior opposition (Dckt. No. 95) and verified complaint in determining the propriety of summary judgment.

## II.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

---

[2] Defendants new motion does not seek summary judgment on plaintiff's First Amendment retaliation claim, which remains pending.

1 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving
2 party meets its burden with a properly supported motion, the burden then shifts to the opposing
3 party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);
4 *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

5       A clear focus on where the burden of proof lies as to the factual issue in question is
6 crucial to summary judgment procedures.  Depending on which party bears that burden, the party
7 seeking summary judgment does not necessarily need to submit any evidence of its own.  When
8 the opposing party would have the burden of proof on a dispositive issue at trial, the moving
9 party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*
10 *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters
11 which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-
12 24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
13 issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,
14 depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment
15 should be entered, after adequate time for discovery and upon motion, against a party who fails
16 to make a showing sufficient to establish the existence of an element essential to that party's
17 case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a
18 circumstance, summary judgment must be granted, "so long as whatever is before the district
19 court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

20       To defeat summary judgment the opposing party must establish a genuine dispute as to a
21 material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)
22 that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.
23 at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing
24 law will properly preclude the entry of summary judgment.").  Whether a factual dispute is
25 material is determined by the substantive law applicable for the claim in question.  *Id.*  If the
26 opposing party is unable to produce evidence sufficient to establish a required element of its

4

claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any

5

genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 109-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    Analysis**

As noted in the court's screening order, plaintiff has stated claims against defendants Medina and James for deprivation of necessary testosterone, pain medications, medical appliances and chronos in violation of the Eighth Amendment, against defendant Hitchcock for deprivation of necessary medical appliances and chronos in violation of the Eighth Amendment, and against defendant Medina for retaliating against him in violation of the First Amendment by denying him pain medication and testosterone and seizing his medical devices and chronos. The instant motion addresses solely plaintiff's Eighth Amendment claims.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was

(a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332. When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available was painkillers).

Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to prevent a violation imposed by someone else. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). A defendant-officer may be held liable for failing to intervene when he had enough time to observe what was happening and to intervene and prevent or curtail the violation, but failed to do so. *See Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459, 2010 WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

Plaintiff alleges that defendants Medina and James failed to provide him with necessary testosterone treatments and pain medication and that defendants Medina, James and Hitchcock deprived him of necessary medical appliances and chronos.

**A.    Denial of Testosterone and Oxycodone/Hydrocodone**

Defendants James and Medina argue that the undisputed facts show that they did not expose plaintiff to a risk of harm and that, in fact, their actions caused plaintiff no harm.

Defendants offer the following facts and evidence, which plaintiff has not disputed: Between December 3, 2007 and June 5, 2008, defendant James examined plaintiff twice – on January 22, 2008 and on March 4, 2008. Dckt. No. 109-3, Defs.' Stmt. of Undisp. Facts ISO Mot. for Summ. J. (hereinafter "DUF") 19, 25. Defendant Medina also examined plaintiff. DUF 35. During that time, plaintiff suffered from hypogonadism, meaning he had reduced gonadal hormones. DUF 5. Hypogonadism can cause fatigue, loss of libido, and testicular atrophy. *Id.* Plaintiff had received testosterone injections to treat the hypogonadism prior to December 4, 2007. DUF 11. On January 19, 2011, medical staff "M. Miller" discontinued the prescription for testosterone injections and instead ordered topical testosterone gel to treat the condition. DUF 14, 15; Dckt. No. 109-4 at 33. Declarations from defendant James and defense expert Dr. B. Barnett attest that treatment of hypogonadism with topical gel is equivalent or superior to treatment with injections. DUF 16; Dckt. No. 109-4 at 6, Decl. of G. James ¶ 6.

At the time, plaintiff also suffered some testicular pain, knee pain, and neuropathic pain in his back, possibly as the result of an old gun shot wound. DUF 37; Dckt. No. 109-4 at 36 (defendant James's notes from the January 22, 2008 examination) & 39 (defendant James's notes from the March 4, 2008 examination). However, defendant James found no testicular pain during his examinations of plaintiff. *Id.* Plaintiff was prescribed gabapentin (also known as neurontin) to treat his chronic pain. DUF 12.

Defendants argue that the undisputed facts show that plaintiff did not need testosterone shots between December 4, 2007 and June 5, 2008, because he was provided topical testosterone gel – an equivalent or superior treatment for hypogonadism – from January 19, 2008 until March 24, 2008. Defense expert Barnett attests, "Changing inmate Moreno's prescription from testosterone injections to testosterone gel on January 19, 2008, did not expose Moreno to any risk of harm; in fact, medical studies suggest that testosterone gel is superior to testosterone injections for treating hypogonadism, as compared with intramuscular testosterone injections, because testosterone gel produces stable blood levels." Dckt. No. 109-4 at 16, Decl. of B.

8

Barnett ¶ 17. Further, Dr. Barnett attests that plaintiff did not face a risk of harm in the periods from December 4, 2007 through January 19, 2008 and March 24, 2008 through June 5, 2008 (when he was without either injections or gel). *Id.* at 20, Barnett Decl. ¶ 54 ("A transiently low testosterone for brief periods of time would be the only consequence of missing injections and this is of little consequence and posed no risk to Moreno's health. Relatively low testosterone for brief periods of time is not associated with any adverse events.") Plaintiff has offered no argument or evidence to raise a dispute over these facts. These undisputed facts necessitate summary judgment in favor of defendants James and Medina on plaintiff's claims that he was denied necessary testosterone treatment.

Defendants James and Medina further argue that the undisputed facts show that plaintiff did not need oxycodone or hydrocodone between December 4, 2007 and June 5, 2008. Defendants' undisputed evidence is that, when plaintiff requested oxycodone or hydrocodone on January 22, 2008, plaintiff did not exhibit any symptoms warranting treatment with oxycodone or hydrocodone. DUF 23; Dckt. No. 109-4 at 36. There is evidence in the court's record that medical staff (signature illegible) ordered hydrocodone for plaintiff's testicular pain from February 19, 2008 until March 23, 2008. Dckt. No. 81-6 at 30, 81-9 at 15. However, that evidence does not rebut defendants' undisputed facts and evidence that, at other relevant times, plaintiff did not exhibit a medical need for narcotic pain medication. Defense expert Dr. Barnett attests that defendant James's decision not to give plaintiff oxycodone on January 22, 2008 "was reasonable, consistent with best practices, and did not expose Moreno to any risk of harm." Dckt. No. 109-4 at 16-17, Barnett Decl. ¶¶ 19-23. Dr. Barnett further attests that oxycodone and hydrocodone are disfavored to treat chronic pain due to their addictiveness and should not be used to treat testicular pain. Dckt. No. 109-4 at 15, Barnett Decl. ¶¶ 6-7. Defendant Medina's April 22, 2008 exam of plaintiff, as well as plaintiff's medical records, did not reveal that plaintiff had a medical need for hydrocodone or oxycodone. *Id.* at 18, Barnett Decl. ¶ 37;

////

DUF 38-39. On the evidence presented, there is no triable issue of material fact that defendants exposed plaintiff to a risk of harm by denying narcotic pain medication.

### B. Deprivation of Disability Chronos and Appliances

Defendant James argues the cancellation of plaintiff's disability status did not expose plaintiff to a risk of harm because plaintiff told him he was not disabled and demonstrated he was not disabled during the March 4, 2008 exam. DUF 25-27. Plaintiff does not dispute this fact. Accordingly, the undisputed facts show that defendant James's cancellation of plaintiff's disability status was reasonable in response to plaintiff's assertion that he was not disabled and consequent physical demonstration. The undisputed evidence that plaintiff told defendant James he was not disabled and demonstrated he was not disabled also necessitates summary adjudication of plaintiff's claim against defendants Medina and Hitchcock for confiscating plaintiff's disability chronos and devices. Plaintiff has not proffered any evidence that he suffered adverse medical consequences from the confiscation of his disability-related devices and chronos, and has accordingly failed to raise a triable issue of material fact that he had a serious medical need for them.

### IV. Recommendation

Accordingly, it hereby is RECOMMENDED that defendants' September 10, 2012 motion for summary adjudication (Dckt. No. 109) be granted and that plaintiff's Eighth Amendment claim be summarily adjudicated in favor of defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11